[No. B019099. Second Dist., Div. Five. Mar. 8, 1988.]

THE PEOPLE, Plaintiff and Appellant, v.
GILBERTO ANGULO, Defendant and Respondent.

### COUNSEL

Ira Reiner, District Attorney, Arnold T. Guminski and Sterling S. Suga, Deputy District Attorneys, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

### OPINION

**ASHBY, J.**—By information defendant Gilberto Angulo was charged in three counts with possession for sale of cocaine, possession for sale of heroin, and possession for sale of marijuana (Health & Saf. Code, §§ 11351, 11359). The superior court partially granted defendant's motion to suppress evidence (Pen. Code, § 1538.5) and simultaneously dismissed the information (Pen. Code, § 995). The People appeal. (See *People* v. *Laiwa* (1983) 34 Cal.3d 711, 716-724 [195 Cal.Rptr. 503, 669 P.2d 1278].)

The theory of the trial court's ruling was that certain evidence found in defendant's home, even though seized pursuant to a search warrant, was tainted by a prior warrantless entry to secure the premises, and that in light of this ruling there was insufficient evidence to connect defendant to the various items of contraband.

The People correctly contend that under *Segura* v. *United States* (1984) 468 U.S. 796, 801 [82 L.Ed.2d 599, 606, 104 S.Ct. 3380], the warrantless entry to secure the premises, even if illegal, did not taint the evidence which was secured pursuant to the warrant. Accordingly, the trial court erred in suppressing the evidence seized pursuant to the warrant and in dismissing the action.

Briefly, Los Angeles police received information that a load of heroin had been shipped to a storage location in the Los Angeles area. Based on the

telephone number given by the informant, police surveilled the residence at 969 Milford Avenue in Pomona where they observed a car which was registered to defendant. Officers observed defendant and a Robert Pena leave the residence, drive to a restaurant, and return toward the residence. After observing erratic driving, a Pomona police officer stopped the vehicle, saw a loaded handgun on the front floorboard of the car, and arrested defendant and Pena.

Detective Granado thereafter telephoned the residence, telling the person who answered the phone that he had arrested two suspects in possession of a gun and desired to search the house for additional weapons. The person on the phone indicated he would wait for 15 minutes and had no problem with the police coming by and searching the house. Immediately after the phone call was completed however, surveilling officers observed codefendants Samuel and Ramon Carbajal come running out of the house carrying a large canvas bag, enter a vehicle and back out of the driveway. The police subsequently stopped this vehicle and lawfully seized from the canvas bag two plastic baggies containing cocaine, nine condoms containing heroin, and approximately $35,000 in cash.

Fearing that additional evidence might be destroyed, the police immediately entered the home to secure the premises. After making a quick walk-through for additional suspects and finding none, the police arranged a conference telephone call among Detective Granado, a deputy district attorney, and a municipal court judge. After hearing Detective Granado's oral statement under oath, the judge issued a search warrant authorizing a search of the premises. (Pen. Code, § 1526.) Pursuant to the warrant, the police found numerous quantities of contraband, drug paraphernalia, guns, and personal items and documentary evidence connecting defendant with the residence.

This appeal is limited to the admissibility of certain evidence seized pursuant to the telephonic search warrant. The trial court upheld the seizure of the cocaine and heroin in the canvas bag in the possession of the Carbajals, so that seizure is not an issue. The trial court ruled that the police did not have sufficient exigent circumstances to justify entering the house without a warrant to secure the premises. From this finding, the trial court then concluded that "all the conduct that takes place after that entry is unconstitutional." The People correctly contend that under *Segura* v. *United States, supra,* 468 U.S. at page 801 [82 L.Ed.2d at page 606], the trial court's conclusion was erroneous.

Immediately after the warrantless entry and during the walk-through for additional suspects, the police observed in plain view three large trash bags

of marijuana and certain guns. As in *Segura* v. *United States, supra,* 468 U.S. at page 804 [82 L.Ed.2d at page 608], the prosecutor in this case asked the trial court to distinguish between the items seized upon initial entry and the items subsequently discovered in the more thorough search pursuant to the warrant. *Segura* supports the People's position in this case that even assuming the illegality of the initial entry and walk-through, the latter items were admissible. As in *Segura,* we do not address whether the marijuana and guns observed in plain view during the initial walk-through would also be admissible. (*Segura* v. *United States, supra,* 468 U.S. at p. 804 (maj. opn.), 831 (dis. opn. [82 L.Ed.2d at pp. 608, 625-626]).)

■ Reviewing familiar principles, the court in *Segura* stated: "The question to be resolved when it is claimed that evidence subsequently obtained is 'tainted' or is 'fruit' of a prior illegality is whether the challenged evidence was ' "come at by exploitation of [the initial] illegality or instead by means *sufficiently distinguishable* to be purged of the primary taint." ' [¶] It has been well established for more than 60 years that evidence is not to be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint,' . . . . It is not to be excluded, for example, if police had an 'independent source' for discovery of the evidence." (*Id.* at pp. 804-805 [82 L.Ed.2d at p. 608], citations omitted, brackets and italics theirs; *Wong Sun* v. *United States* (1963) 371 U.S. 471, 477-478 [9 L.Ed.2d 441, 448-449, 83 S.Ct. 407]; *Nardone* v. *United States* (1939) 308 U.S. 338, 341 [84 L.Ed. 307, 311-312, 60 S.Ct. 266].)

In *Segura,* the information on which the search warrant was issued came from sources wholly unconnected with the illegal entry and known to the agents before the entry. Since the information possessed by the agents in *Segura* before they entered the apartment constituted an independent source of probable cause for issuance of the warrant, the evidence seized in the search pursuant to the warrant was admissible. "The valid warrant search was a 'means sufficiently distinguishable' to purge the evidence of any 'taint' arising from the entry." (*Id.* 468 U.S. at p. 814 [82 L.Ed.2d at p. 615].)

■ Similarly here, prior to the initial entry into the house the police had sufficient information from independent sources to obtain a search warrant. The police had observed Ramon and Samuel Carbajal flee the house with a canvas bag found to contain two plastic baggies of cocaine, nine condoms of heroin, and $35,000 in cash. This evidence, lawfully seized, corroborated other lawfully obtained information that this house was a distribution point for the sale of illegal drugs. Since information from these independent sources supported the subsequent issuance of the warrant,

evidence obtained as a result of the warrant search was admissible, regardless of the ruling that the initial warrantless entry was not supported by sufficient exigent circumstances. *(Segura* v. *United States, supra,* 468 U.S. at pp. 804-805, 813-814 [82 L.Ed.2d at pp. 608-609, 614-615].)

This case does contain one distinction from *Segura,* but that distinction is not determinative. In *Segura, no* information obtained during the initial entry was actually used in securing the warrant. (468 U.S. at p. 814 [82 L.Ed.2d at pp. 614-615].) Here, after reciting all the background circumstances leading up to the entry, Detective Granado also mentioned, in applying telephonically for the search warrant, that during the walkthrough for additional suspects, the police had observed in plain view three large plastic bags containing marijuana, as well as some rifles and handguns. The inclusion of this additional fact did not taint the warrant however, because the information obtained prior to the entry was sufficient probable cause for issuance of the warrant. ■ If lawfully obtained information in a search warrant affidavit supports probable cause for issuance of a warrant, the warrant will be upheld even if additional, illegally obtained, information is also contained in the warrant affidavit. *(United States* v. *Giordano* (1974) 416 U.S. 505, 555-556 [40 L.Ed.2d 341, 375-376, 94 S.Ct. 1820] (conc. and dis. opn. of Powell, J.); *James* v. *United States* (D.C. Cir. 1969) 418 F.2d 1150, 1151-1152; *Howell* v. *Cupp* (9th Cir. 1970) 427 F.2d 36, 38; accord *People* v. *Chapman* (1984) 36 Cal.3d 98, 113-114 [679 P.2d 62]; *People* v. *Cook* (1978) 22 Cal.3d 67, 96, fn. 17 [148 Cal.Rptr. 605, 583 P.2d 130]; *People* v. *Luevano* (1985) 167 Cal.App.3d 1123, 1127-1128 [213 Cal.Rptr. 764].) *Segura* has been applied where the affidavit also contained observations made during the illegal securing of the premises. *(U.S.* v. *Grandstaff* (9th Cir. 1987) 813 F.2d 1353, 1354, 1355, 1357; see *United States* v. *Lancellotti* (9th Cir. 1985) 761 F.2d 1363, 1367; accord *Segura* v. *United States, supra,* 468 U.S. at p. 814 [82 L.Ed.2d at pp. 614-615] (no information obtained from illegal entry "was needed or used" to secure warrant).)

In holding that the evidence seized pursuant to the warrant was admissible because it had an independent source, and that under such circumstances the prior illegal entry and occupation of the premises was irrelevant *(Segura* v. *United States, supra,* 468 U.S. at pp. 813-814 and fn. 9 [82 L.Ed.2d at pp. 614-615]), the United States Supreme Court necessarily rejected the broad exclusionary rule of cases such as *People* v. *Shuey* (1975) 13 Cal.3d 835, 850 [120 Cal.Rptr. 83, 533 P.2d 211], which approach this issue from the opposite perspective that the subsequent issuance of a

warrant is irrelevant.[1] In footnote 9 of *Segura,* the United States Supreme Court approved *United States* v. *Perez* (8th Cir. 1982) 700 F.2d 1232, 1237-1238, and disapproved *United States* v. *Allard* (9th Cir. 1980) 634 F.2d 1182, 1186-1187 (which had cited *Shuey*). Recent decisions of the Ninth Circuit recognize that *Segura* "foreclosed continued adherence to the broad exclusionary rule of *United States* v. *Allard* . . . ." *(U.S.* v. *Valles-Valencia* (9th Cir. 1987) 811 F.2d 1232, 1237, mod. 823 F.2d 381; *United States* v. *Lancellotti, supra,* 761 F.2d 1363, 1366-1367.) ■■■ Since the evidence seized pursuant to the warrant in this case would be admissible under federal law, it is admissible here. (Cal. Const. art. I, § 28, subd. (d); *In re Lance W.* (1985) 37 Cal.3d 873, 884-890 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Luevano, supra,* 167 Cal.App.3d at 1128.)

The trial court therefore erred in suppressing the evidence as fruit of the illegal initial entry. The court should have ruled that the evidence seized pursuant to the search warrant was admissible because the police had information from independent sources supporting issuance of the search warrant.

The order dismissing the information and the order suppressing evidence are reversed and the cause remanded for further proceedings consistent with the views expressed in this opinion.

Boren, J., and Feinerman, J.,* concurred.

---

[1] In *Shuey,* the court stated "[a]nalytically this case can be regarded simply as involving a de facto, inchoate seizure . . . the moment the police began the illegal occupation. Thereafter the obtaining of the warrant could no more operate 'to disinfect this conduct' . . . than if the police had actually seized the individual items sought to be suppressed prior to acquisition of the warrant." *(People* v. *Shuey, supra,* 13 Cal.3d at p. 850.)

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.